USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
:
VERIFICIENT TECHNOLOGIES, INC.,                               :
                                                              :
                                       Petitioner,            :     1:24-cv-09487-GHW
                                                              :
                   -v-                                        :     MEMORANDUM
                                                              :     OPINION & ORDER
APRATIM DUTTA,                                                :
                                                              :
                                       Respondent.            :
                                                              :
------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

      Petitioner Verificient Technologies, Inc. ("Verificient") seeks to confirm an arbitration award obtained against Respondent Apratim Dutta pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* For the reasons that follow, Verificient's petition to confirm the arbitration award is GRANTED.

## I.    BACKGROUND

      In November 2013, Petitioner entered into an employment agreement with Respondent. *See* Dkt. No. 1, Petition to Confirm Arbitration Award ("Pet."), ¶ 8; *see also* Dkt. No. 1-2, Dutta Employment Agreement (the "Agreement"). The Agreement provides that Respondent must "take all reasonable precautions to prevent any unauthorized use or disclosure of Company Confidential Information," Agreement § 2(B); Respondent may "not . . . serve as a partner [or] principal . . . or otherwise join, participate in, or affiliate [] with any business . . . competitive with or otherwise similar to any of [Verificient's] products or business verticals," *id.* § 7(A); and Respondent may not "engage in any other employment activities that conflict with [Respondent's] obligations to [Verificient]," *id.* § 4.

      Section 12 of the Agreement contains an arbitration provision, which stipulates that "any and all controversies, claims, or disputes . . . arising out of, relating to, or resulting from

[Respondent's] employment with [Verificient] . . . shall be subject to binding arbitration under the arbitration provisions set forth in the New York Civil Practice Laws and Rules . . . and pursuant to New York law." *Id.* § 12(A). Section 12 further provides that "the parties to the arbitration shall each pay an equal share of the costs and expenses of such arbitration, except as prohibited by law, and [] that each party shall separately pay for its respective attorneys' fees and costs," and added that "the arbitrator shall have the power to award any remedies available under applicable law." *Id.* § 12(b). Section 13(B) of the agreement contains an indemnification provision in favor of Verificient, stating that "[Respondent] shall indemnify [Verificient] from any and all costs, fees, or expenses incurred by [Verificient] (including, but not limited to, attorneys' fees) in successfully enforcing the terms of this Agreement against [Respondent]." *Id.* § 13(b).

In December 2018, Petitioner instituted an arbitration proceeding against Respondent pursuant to Section 12 of the Agreement, asserting, among other things, breach of fiduciary duty, breach of contract, and misappropriation of funds. Dkt. No. 13, Petitioner's Statement of Material Facts ("PSMF"), ¶ 10. Petitioner claimed that Respondent, while serving as Petitioner's President and CEO, violated his fiduciary and contractual duties by creating a separate, competing business entity in India that poached Petitioner's employees. Pet. ¶ 9. Petitioner also claimed that Respondent "took actions that, among other things, blocked Petitioner Verificient's ability to raise capital, collect revenues owed by customers, grow segments of the business, continue effective operations, [and] maintain access to customer account records and agreements." *Id.* ¶ 10.

Justice Anthony J. Carpiniello (the "Arbitrator"), formerly of the New York State Appellate Division, Third Department, was selected to arbitrate the parties' dispute. PSMF ¶ 11. The procedural history of the arbitration was described by the Arbitrator as "exceedingly tortuous," as "Respondent [] made numerous applications requiring considerable attention from his adversary and the arbitrator while consistently refusing to pay any of JAMS fees." Dkt. No. 11-1 ("JAMS Award")

at 6. Respondent filed numerous counterclaims against Petitioner and its principals, including for unpaid wages, fraud, and defamation. *Id.* at 11–12. Throughout the arbitration, Respondent "consistently refus[ed] to pay any of the JAMS fees." *Id.* at 12.

After approximately five years of arbitration, "Petitioner moved for summary judgment on its claims and dismissal of Respondent's claims." PSMF ¶¶ 13–16. The Arbitrator found that Respondent did not respond to the motion, other than by levying threats against the Arbitrator and his family. JAMS Award at 2; *see also* PSMF ¶ 16. After Respondent failed to adequately respond to the motion, the Arbitrator granted summary judgment to Petitioner by default on June 8, 2023. JAMS Award at 7; PSMF ¶ 17. On December 16, 2023, the Arbitrator issued an award in Petitioner's favor totaling $483,681.98, which included all JAMS fees, partial attorneys' fees, and all "compensation paid to Respondent during the period of disloyalty." JAMS Award at 3. Petitioner was also awarded the ability to seek payment of the judgment by levy on shares of Petitioner owned by Respondent. *Id.*

On December 12, 2024, Petitioner filed a petition with this Court to confirm the JAMS Award. Dkt. No. 1. Shortly thereafter, on January 15, 2025, Petitioner sought a fourteen-day extension of the date to effect service on Respondent, due to Petitioner's inability to locate and serve Respondent. Dkt. No. 14. The Court granted the request. Dkt. No. 15. Petitioner attempted to effect service on Respondent at two separate addresses: one provided by Respondent during the arbitration proceeding and one provided by a private investigator hired by Petitioner. Dkt. No. 16-1 ¶¶ 5–9. When Petitioner attempted to effectuate service at the former address, the resident of the property stated that he did not know Respondent. *Id.* ¶ 10. When Petitioner attempted to effectuate service on the latter address on four occasions, no one answered the door. *Id.*; Dkt. No. 16-2.

On January 31, 2025, Petitioner sought leave to effect alternative service on Respondent via email and newspaper publication. Dkt. No. 16. The Court granted Petitioner's request on February

3

3, 2025, ordering that notice summarizing the action and relief sought be published weekly for four weeks in a newspaper near Respondent's last known residence, as well as emailed to Respondent's last known email addresses. Dkt. No. 17. On March 8, 2025 and April 1, 2025, Petitioner filed proof of this alternative service. Dkt. Nos. 18, 19.

By letter dated April 15, 2025, Respondent wrote to the Court, stating that he had not been served a copy of the petition and had only become aware of it by other means on April 14, 2025. Dkt. No. 24. In that letter, Respondent requested a thirty-day extension to respond to the pending petition. *Id.* The Court granted Respondent's request on April 17, 2025, giving Respondent until May 17, 2025 to file a response. Dkt. No. 26. In its April 17, 2025 order, the Court stated, "If Respondent does not file opposition papers on or before May 17, 2025, the Court will rule on the petition as unopposed." *Id.* at 2. On May 19, 2025, the Court granted Respondent a further extension of the deadline to file opposition to June 18, 2025. Dkt. No. 32. As of the date of this order, Respondent has failed to timely file his opposition papers. However, the Court notes that on June 10, 2025, Respondent took the time to file a multi-page submission with nearly 150 pages of exhibits regarding issues irrelevant to the merits of the pending petition. Dkt. No. 40.

## II.     DISCUSSION

### A. Confirmation of the Arbitration Award

"[T]o avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation, arbitral awards are subject to very limited review." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) (quoting *Folkway Music Publishers., Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) (internal quotation marks omitted)). Confirmation of an arbitral award is generally a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected as prescribed in 9 U.S.C. §§ 10 and 11. *See Century Indem. Co. v.*

*Certain Underwriters at Lloyd's London*, 11 Civ. 1040 (RJS), 2012 WL 104773, at *2 (S.D.N.Y. Jan. 10, 2012). Those statutory grounds for vacatur are: "(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

In reviewing arbitration awards under § 10(a)(4) of the FAA, a court "will uphold an award so long as the arbitrator 'offers a barely colorable justification for the outcome reached.'" *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quoting *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009)). "It is not enough . . . to show that the panel committed an error—or even a serious error. It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (internal citations and quotation marks omitted). "In other words, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *Jock*, 646 F.3d at 122 (quoting *ReliaStar*, 564 F.3d at 86).

In this case, the award has not been vacated, modified, or corrected pursuant to 9 U.S.C. §§ 10 and 11. There is no reason to believe that Petitioner procured the award through fraud or dishonesty, or that the Arbitrator disregarded the Agreement or acted outside the scope of his authority as arbitrator under the Agreement. Rather, the record indicates that the Arbitrator limited the award only to the damages related to matters within the scope of the order granting summary

5

judgment. JAMS Award at 2–3 (rejecting Petitioner's request for judgment on "a panoply of claims beyond those authorized by the order granting summary judgment" and rejecting Petitioner's request for "reimbursement of all sums paid to respondent"). The record also indicates that the Arbitrator based the award and the order granting summary judgment on the undisputed evidence that Respondent usurped Petitioner's corporate opportunities, in violation of the Agreement. Further, the record indicates that the Arbitrator based the amount of the award—both the compensatory damages and the arbitration and attorneys' fees—on the Agreement and on the undisputed evidence. Accordingly, the award is confirmed.

### B. Pre-Judgment Interest

In the Second Circuit, "[t]he decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." *SEIU v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004). However, there is a "presumption in favor of pre-judgment interest." *Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984). Further, courts in the Southern District have held that "pre-judgment interest [is] appropriate where the agreement between the parties states that an arbitration decision is final and binding." *Herrenknecht Corp. v. Best Road Boring*, 2007 WL 1149122, at *3 (S.D.N.Y., 2007). "Under New York law, pre-judgment interest runs from the date of the arbitration award until the entry of final judgment." *Trustees of New York Hotel Trades Council and Hotel Assn. of New York City, Inc. Health Benefits Fund v. 123 Washington LLC*, No. 24-cv-9322 (VEC), 2025 WL 968550, at *2 (S.D.N.Y. Mar. 31, 2025).

Here, the Agreement clearly states that "Arbitration shall be the sole, exclusive, and final remedy for any dispute between [Respondent] and [Petitioner]." Agreement § 12(C). Respondent has failed to comply with the Arbitrator's award and has failed to oppose the petition to confirm the award after requesting an extension of time to do so. Respondent also offers no reason why the

Court should depart from the presumption in favor of pre-judgment interest. The Court therefore, in its discretion, grants pre-judgment interest.

Given that the Agreement stipulated that the arbitration "apply substantive and procedural New York law," *id.* § 12(A), the Court imposes the default pre-judgment interest rate of 9 percent per year, pursuant to CPLR § 5004(a). *See Trustees of New York Hotel Trades Council*, 2025 WL 968550, at *2 (S.D.N.Y. Mar. 31, 2025) ("The 'common practice' in the Second Circuit is to grant interest at a rate of nine percent per annum, consistent with the statutory rate set in N.Y. C.P.L.R. 5004."). Therefore, Petitioner is granted pre-judgment interest at the statutory rate of 9 percent per year on each element of the award from December 16, 2023 to the date of this order.

### C. Post-Judgment Interest

The award of post-judgment interest in civil cases is governed by 28 U.S.C. § 1961(a), which states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." When confirming arbitration awards, courts in the Second Circuit have consistently held "that the language of § 1961 is mandatory; it directs that interest '*shall be*' calculated at the rate allowed by state law. Its terms do not permit the exercise of judicial discretion in its application." *Carte Blanche (Singapore) Pte. v. Carte Blanche Int'l*, 888 F.2d 260, 269 (2d Cir. 1989). Parties are permitted to contract for a set rate of post-judgement interest of any arbitration award, but "such contracts must actually indicate the parties' intent to deviate from § 1961," otherwise, the rate is governed by § 1961. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004). Here, the Agreement between the parties made no reference to post-judgment interest, so the statute governs. Therefore, Petitioner is granted post-judgment interest at the rate provided in 28 U.S.C. § 1961(a).[1]

### D. Attorneys' Fees & Costs

---

[1] "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C.S. § 1961(a).

Distinct from the attorneys' fees already awarded in the arbitration award, Petitioner also seeks attorneys' fees and costs incurred in this action to confirm the arbitration award. In accordance with the 'American Rule,' "[a]bsent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257, 95 S. Ct. 1612, 1621 (1975). In the Second Circuit, employment agreements explicitly providing for indemnification of enforcement costs can justify such awards. *See A.N. Deringer, Inc. v. Strough*, 103 F.3d 243, 245 (2d Cir. 1996). Further, the New York Court of Appeals has held that a court "should not infer a party's intention to waive the benefit of the [American] rule unless the intention to do so is unmistakably clear from the language [of the contract]." *Hooper Assocs., Ltd. v. AGS Computs., Inc.*, 74 N.Y.2d 487, 492 (1989).

Here, section 13(B) of the Employment Agreement clearly states the parties' intent that Respondent indemnify Petitioner in this case. Section 13(B) states that "[Respondent] shall indemnify [Petitioner] from any and all costs, fees, or expenses incurred by [Petitioner] (including, but not limited to, attorneys' fees) in successfully enforcing the terms of this Agreement." Agreement § 13(B). The language of the Agreement clearly and unambiguously indemnifies Petitioner for the requested confirmation-related attorneys' fees and costs. Given Respondent's failure to timely respond and file opposition materials, the Court has no basis to stray from the agreed-upon terms of the Agreement. Therefore, Petitioner is granted reasonable attorneys' fees and costs for this action and its enforcement.

Second Circuit precedent requires that a party seeking an award of attorneys' fees support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983). Fee applications that do not contain such supporting data "should normally be disallowed." *Id.* at 1154; *accord Scott v. City of New York*, 643 F.3d 56, 58 (2d Cir. 2011).

District courts have "considerable discretion" in determining what constitutes a reasonable award of attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). Those hourly rates "are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

Therefore, Petitioner is directed to file by no later than July 3, 2025, an application for an award of attorneys' fees, accompanied by an affidavit of counsel and appropriate time sheets, reflecting the total amount of fees and costs incurred by Petitioner in this action.

### III.     CONCLUSION

For the reasons stated above, Verificient's petition to confirm the arbitration award is GRANTED. The Clerk of Court is directed to enter judgment in favor of Petitioner in the amount of $483,681.98 with pre-judgment interest at a rate of 9 percent per year from December 16, 2023 to the date of this order and with post-judgment interest at the rate provided in 28 U.S.C. § 1961(a). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is further directed to mail a copy of this order to Respondent by first-class and certified mail at his address of record at Dkt. No. 28.

SO ORDERED.

Dated:  June 20, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge